AllianceOne Rec. Mgmt., Inc. May it please the Court, my name is Adam Berger, and I represent Plaintiff Appellant Dana Syria in this matter. I would like to try and reserve three of my minutes. Okay, try to keep your eye on the clock, and we'll try to help. Thank you, Your Honor. I'd like to turn first to the jurisdictional issue in this case. It is clear from the record that AllianceOne untimely invoked the jurisdiction of the federal courts for the clear purposes of forum shopping following an adverse state court ruling. The notice of removal itself makes it patently clear that the removal was untimely under Section 28 U.S.C. 1446 B.3. For me, the question is whether the district judge appropriately struck something that shows up late. If he appropriately struck that, I think you lose on the point. Can you address the question as to whether Judge Zilley appropriately struck that mention of that document? I think you're referring to the February 2017 Declaration of Counsel that reiterated back to AllianceOne the $3.3 million figure of collection fees collected. I don't think that was properly stricken. It was in the state court record. It was not mentioned in our motion to remand because at that time we were looking at the notice of removal, which contained all of the information necessary to establish jurisdiction under CAFA, including the December 2016 discovery responses, the January 2017 discovery responses, all of which was in the record way more than 30 days before removal. But you agree that the standard is abuse of discretion in terms of striking the document, don't you? But the standard in terms of striking the document, yes. But the standard of review on the motion to remand is de novo. I understand that. But the question is what's the evidence we have in front of us, and if the document is stricken on abuse of discretion, we review that for abuse of discretion. And I think the document was improperly stricken because it was in strict reply to the argument raised in AllianceOne's opposition to the motion to remand in the first instance, which was this argument that the documents had to be received from the plaintiff in order to trigger 1446B3. And I think that argument is incorrect as a matter of law to begin with. But the citation to the February 2017 declaration, which, again, was in the state court record, was in strict reply to that argument and, therefore, was an abuse of discretion to strike it. Even setting aside that document, again, all of the information was stated clearly in papers in the record more than 30 days prior to July 2017 to establish all of the bases for CAFA jurisdiction, including the amount in controversy and the number of class members. And that includes the December 2016 responses from AllianceOne to plaintiff's discovery, saying that it had collected $3.3 million in fees, in transaction fees from punitive class members. And there was no mystery. AllianceOne was under no misconception about the purpose for that discovery response or the significance of the discovery response because it acknowledged, it expressly stated in the response to discovery that this information was provided to gauge the size of a potential class and to estimate potential damages. And it was also clear from the notice of removal that this was for purposes of form shopping. Both the notice of removal and the declaration of counsel identified the state court's grant of class certification as the paper or the event that they believed triggered a new window for removal under CAFA, which is inconsistent with the statutory text and with this court's prior interpretations of CAFA. Let's say you judge the amount in controversy in CAFA jurisdiction from the time of filing the complaint, not dependent on the outcome of any ruling on class certification or decertification. You know, what they wanted was a second bite in federal court, and that's what they got. Over the two-year history, the almost two-year history of this case prior to removal, the state court judges had repeatedly rejected AllianceOne's arguments regarding the scope of the Collection Agency Act and the Consumer Protection Act, but when they got the second bite at the apple, the district court judge in this case summarily dismissed plaintiff's claims. And so this is a textbook example of what 1446b3 was intended to prohibit or to preclude. You know, I'm very sympathetic, and I'm sure you read my Roth opinion. I don't really like the way the statute was drafted. If it were this ordinary removal rather than CAFA removal, there would be an outer boundary of one year irrespective of who gave what to whom. You could, if you'd thought about it, if you'd realized the problem soon enough, you could have unambiguously submitted a document to them, and then the 30-day clock would have started to run. I still don't think that was necessary, and I'm well aware of the opinion in Roth, but Roth arose out of a district court opinion that said the only time that defendants can remove is when they've received a paper from the plaintiff. And this court in Roth said that's not the case. Defendant can remove at any time so long as the other windows under 1446b3 have not been triggered. And here the second window was triggered. And I'd like to address directly the district court's reliance and Alliance 1's position with regard to the word receipt in 1446b3, and I'd like to start by pointing out that 1446c expressly identifies information relating to the amount in controversy contained in responses to discovery as an other paper that triggers the provisions, the window under 1446b3. And 1446c doesn't say anything about it needing to be discovery from the plaintiff to the defendant. It just says responses to discovery. Similarly, 1446b3 is not limited on its very face to papers given by the plaintiff to the defendant. It includes orders which can't come from the plaintiff. And I think it would also, you know, and we've addressed this in our brief, even if you look at the plain English language of receipt, it means to come into possession of or acquire. And there's no question on the objective record here that Alliance 1 had acquired, was in possession of the information necessary to determine that the case amounting controversy was satisfied no later than December of 2016 when in response to plaintiff's discovery requests, it provided $3.3 million from 166,000 class member figures. And while this Court's previous opinions have said that the undisclosed, purely subjective knowledge of a defendant doesn't trigger 1446b3, that's not the case here. Here the information was objectively disclosed in discovery pleadings and court filings. I also would point out the practical implications here, which is that in consumer class actions like this one, in wage and hour class actions, the information relating to the amount in controversy is almost always exclusively in the possession of the defendant. And so a rule that says when a plaintiff asks for that information in discovery, compels the production of that in discovery, the defendant can then ignore that or disregard that information that has been placed in the record and has a free pass to remove at any time, would stretch CAFA beyond the bounds and encourage exactly the kind of gamesmanship and forum shopping. It's not exactly a free pass because, as I think Judge Fletcher indicated in his question, you certainly could have made certain that through your own affirmative act that they had that information. So whether it is or it isn't gamesmanship, it's not as if there's no remedy for a plaintiff's counsel. Well, and we did the two things that we could do here. One was ask for the information and get it in the record objectively through discovery. And the second was we did repeat it back to Alliance 1. And again, the 166,000 class member figure was cited in their notice of removal in the declaration, in my declaration submitted to the district court in support, to the state court in support of class certification. It was only that February 2017 declaration of counsel that repeated back the $3.3 million figure that was not cited in the notice of removal and that we timely cited in reply in response to this argument. And recall that in the notice of removal itself, one of the bases that Alliance 1 gave for asserting CAFA jurisdiction was our January 2017 discovery responses, where they did the simple math of multiplying 166,000 transactions times the $2,000 penalty that the discovery response said we were seeking. And I would like to provide a brief hypothetical, which is imagine that if instead of serving an interrogatory, we had taken a 30B6 deposition of a corporate witness and asked, how much did you collect in transaction fees? And the witness says $3.3 million. The court reporter types up the transcript and later delivers it to Alliance 1 and their counsel. Well, under the definition of receipt used by the district court, that would be another paper received by counsel at that point, by defendant at that point, and should trigger 1446B3. And so it makes no sense to treat the interrogatory response differently from that deposition and deposition transcript. I'd like to turn now to the merits, should the court reach the merits, and first address the scope of the Collection Agency Act. And I think here the district court erred in finding that the Collection Agency Act does not govern the efforts of collection agencies when collecting on public court debt, and did so by ignoring several basic rules of statutory construction, thereby leaving vulnerable consumers without the protections afforded them by the state legislature. And I think you need to go no further than RCW 1916.500, which is the very statutory provision that authorizes collection agencies to collect on public debt and say, that's the provision, therefore the Collection Agency Act applies. And what 1916.500 subparagraph 3 says is that collection agencies collecting debts under that provision shall have only those remedies and powers which would be available to them as assignees of private creditors. In other words, that provision puts collection agencies acting on public debt under the same rules and restrictions and levels the playing field, same sets of rules and restrictions for public debt and private debt. And it's not the only statute that does that. RCW 302045, which authorizes Washington courts of limited jurisdiction to hire collection agencies, said that it shall engage them under RCW 1916. So a specific reference, specific incorporation of the powers and remedies of the Collection Agency Act. Let me ask you a very specific statutory question. In order for the statute to cover, it has to be a, quote, claim. Help me out with the definition of claim and how you've got a claim here. So first of all, I think you have to read the statute as a whole in line with the purposes and intent of the statute, and you can't isolate that word claim. You can't read that in isolation, and that's why we look first at 1916.500 subparagraph 3 and RCW 302045. And if there's any question, because of the liberal application and remedial purposes of the Collection Agency Act, it should be interpreted to extend the protections to consumers, not exclude some debtors from its provisions. Even if we look at the word claim, though, first of all, nothing in the Collection Agency Act definition of claim limits the definition to consensual or consumer transactions. It does talk about agreement or contract, but that just means an understanding of rights and obligations and acquiescence to those. And Ms. Seria had that here, and the only reason Alliance 1 was able to ‑‑ she had any obligation to pay Alliance 1 was because of the contract Alliance 1 had with the King County District Court, which itself said that Alliance 1 had to comply with the Collection Agency Act. And I also think if you read the claim in isolation, you end up with unreasonable results, because if you look at RCW 1916.250, which is the set of prohibited actions under the Collection Agency Act, you know, the word claim appears in some of those prohibited acts, including subparagraph 21, but other subparagraphs don't include the word claim, and a lot of them refer to the word debtor, which is used in 1916.500. And so you would be left with a situation where you ‑‑ let me interrupt. Assuming for the moment we agree with you with respect to claim, I'm looking at RCW 3.02.045, subsection 1. That strikes me as authorizing charges, quote, deemed appropriate. Why is this not an appropriate charge? Because if you look at 3.02.045, it limits the courts themselves to just charging ‑‑ Yeah, I don't read 5 that way. I read 5 as authorizing other things, but not limiting the charges that can be levied above. I respectfully disagree, because 3.02.045 says the court may assess as court costs, which is the amount that the debtor has to pay to the, in case of credit cards, to the amounts paid to the financial institutions in order to pass through charges. And we have to conclude that this is a court cost? In order for the debtor to have to pay it, yes. I mean, the court can agree to pay the collection agency whatever it wants, but in order to compel the debtor to pay it, it's got to be in compliance with all the provisions of the law. Let me ask it this way. If subsection paragraph ‑‑ subsection 5 does not limit subsection 1, does subsection 1 authorize the $5 later $10 charge per credit card transaction? No, it doesn't. Because? Because, again, I think 1 deals with what the court can agree to pay the collection agency. Okay. My time is up. We'll give you a chance to respond. Thank you. Good afternoon, Your Honors. May it please the court, my name is Mark Rosenberg. I'm here on behalf of Appellee Alliance 1 Receivables Management. And we're here today to ask the court to do three things. First, to affirm that removal was timely. Second, to affirm the district court's grant of summary judgment. And third, to deny certification of questions to the Washington Supreme Court. And, Your Honor, I'd like to start, actually, by addressing your first question to counsel. And that was whether or not the document was properly stricken. And, of course, as you indicated, that's a discretionary move. But I think if you look at the order, there's a footnote in regard to the striking where the judge says even if I didn't strike it, it wouldn't have mattered because the declaration only recited the $3.3 million and not the $5 million required under the statute. So even if it was wrong to strike it, even if he hadn't struck it, the result would have been the same. I'm trying to figure out how to read Roth, which I wrote. But, you know, never ask a poet to construe his own poem because he or she is certainly going to be wrong. I'm trying to look again at the statutory wording that says defendant receives by service, anything other means, a document. That suggests, of course, that it can be something delivered to the defendant by the plaintiff. But it only says received, and it doesn't say received from plaintiff. So what does received mean? If the defendant has in its possession a document, any document, that's part of the record of the case, that gives reasonable notice that the jurisdictional requirements are satisfied, does that trigger it? So, for example, deposition testimony or answers to interrogatories. Right. First of all, I think that this Court's decisions in Cuxhausen and Carvello indicate to us that receipt means that it comes from outside to the party. But I'd also note here that there was no such receipt. As Your Honor talks about in Roth, the plaintiff can just provide something. Well, I understand one of the ways of receipt is that the plaintiff provides it, but I'm trying to figure out if there are other ways of receipt within the meaning of the statute that don't require delivery by the plaintiff. You have something in your possession that you didn't previously have in your possession when you have the answers to interrogatories or when you have the transcript of the deposition. Did you never receive that? But we did not have such a document here, Your Honor. No, I'm asking first off for just a construction of the statute. So if you have in your possession answers to interrogatories or if you have in your possession transcript of a deposition, did you ever receive such a thing within the meaning of the statute? You know, there is a case, and I don't recall the citation right now, but it is from this court. It is in the briefing. But there was a case where there was a deposition taken by a 30B-6. The court held that that alone was insufficient to trigger it, but then the plaintiff wrote a letter saying, here's what happened in the 30B-6, and that was sufficient to trigger it. But I want to point out here, Your Honor, that we had a discovery response that said 3.3 million. That's 1.7 million deficient of the jurisdictional requirement. And we received no paper from opposing counsel saying, look, you know, you've given this 3.3 million amount. It's our intention to seek, you know, treble damages under RCW 1986-090, the, you know, discretionary exemplary damage provision of the CPA. No one followed up. And it's important also to note the context. So the court docket will reflect, I was the fourth attorney to appear on behalf of Alliance 1 in this matter. I appeared. There was pending motions practiced. There was overdue discovery. I had to get everything in order. I did my best to get everything in order. I gave these discovery responses not thinking, you know, oh, you know, maybe they're going to try to get exemplary damages on every class member. And then, of course, you've got this extra step of the need for legal research. Because even if they sent something, you know, can a class, every member of a class get exemplary damages? You have to do the legal research to make that determination. And if you do, you know, you see that there was one case where the judge thought he had no discretion.  You have discretion. Give them nothing. Give them whatever you want. But an average lawyer is going to need to do research. It's kind of the same as in the Carvello case where the plaintiff said, look, I've given you my $25,000 demand and you've got 500 class members, so you just spread that across everyone and you know. And the court says, no, we're not going to do that. And the reason why is because, and this is longstanding precedent with the court, if a defendant brings to an appeal a notice of removal and is unable to support it, the court's going to kick it back, sometimes with fees. It'll get remanded. And so because the defendant has the burden of showing jurisdiction, this court has always put the burden on the plaintiff to be very clear about those So in the Dart-Cherokee, I had a reasonable belief after laying everything out, doing an investigation, making some suppositions, making some leaps, counsel still could have challenged what I said and said, no, we're not seeking exemplary damages and you have to go back because you haven't met the jurisdictional standard. It so happens they didn't challenge that. And that's what the Dart-Cherokee case was about, the United States Supreme Court. You know, you can make a good faith removal without having all the details as long as you can subsequently support it. And that's what happened here. In any case, Your Honor, I'd like to move on to the substantive issues. And Your Honor is very right. I mean, the district court had three separate grounds as to why it granted summary judgment in this particular case. And other courts have come to the same conclusion. I mean, you have RCW 1916-100, which defines both claim and debtor. And I note that counsel was saying, well, some sections say claim and some say debtor. But the thing is a debtor is one who has a claim. So in order to be a debtor, you have to have a claim. And a claim arises from a contractor agreement. Whereas here, LFOs, legal financial obligations, are ordered on a person by the court. They're not something that someone agrees to. Well, I'm not sure that that's the case here. Ms. Syria made a statement as part of the plea with the understanding that this restitution order would be entered. Sounds like an implicit contract. And the statute clearly covers implicit contracts. In regard to that, we've submitted authority. There was especially one from the Second Circuit. I don't recall the name right now. But it says what courts do is they look to the principal amount, the basis of the amount itself. I mean, there's no real contract. There's no, I mean, generally for a contract, you need to offer acceptance and consideration. There's no real consideration here. She's just being ordered to pay what she owes over time. But only after she makes that statement, which looks like a plea. Yeah, it's a plea. Now, there's no formal plea agreement. I recognize that. If there were a plea agreement, would that be sufficient to constitute a contract and therefore a claim? No, Your Honor, and that was part of the case. I believe there was a plea agreement in this case. But the plea the court held specifically, not the federal court, but the state court said, no, a plea agreement isn't an agreement. You know, the court can reject it. Well, it's an agreement until the court rejects it. Our whole jurisprudence with respect to plea agreements is that they are binding contracts. Now, they're not a binding contract if the court sets it to one side. But if not set to one side, of course a plea agreement is a binding contract. But the monies paid don't arise from the agreement. They arise from the violation of the law, right? You may agree to jail time or to pay a certain amount of money, but if you don't make the agreement, you're going to pay more money. All of the money you pay is something ordered by the court. Your argument is that this arises from the statutory obligations imposed on the defendant and the statutory power given to the judge irrespective of what the private parties agree to. That's part of it, Your Honor. And the second part is even with a plea agreement, this is all money that she's being ordered to pay, and she may agree to pay a certain amount for some change in the punishment, but one way or another, she's going to get a punishment. I'd like to also move on to the next section because even if there is an agreement, let's say there is an agreement, the district court here said, well, even if there's agreement, you still have RCW 3.02.045, which Your Honor was talking about. And there's a section in that, I believe the one that Judge Zille was looking at, in subsection 1, and it says, these agreements may specify the scope of work, remuneration for services, and other charges deemed appropriate. Well, there was a contract here. It's undisputed. Alliance 1 had a contract with King County District Court. First of all, King County District Court, it's also undisputed, charges the exact same transaction fee that was part of the contract. So our client was doing exactly what the county did in that case. And as Judge Zille found, even if RCW 1916, the Washington Collection Agency Act applies, even if it applied, you still lose under 3.02.045. And I'd like to quickly also, oh, and there's that, the last argument that Judge Zille gave was the good faith argument, right? So you have three arguments from Judge Zille, or three holdings. Two of them address both the per se aspect and the private cause of action under the CPA in regard to the Hangman Ridge test. But the additional component is telling somebody in advance in regard to a fee and then charging them when they get the service they're requesting is not an unfair and deceptive act or practice. The undisputed facts in this case are that Ms. Syria was advised there were free options to pay. She could have gone to the court and written a check. She could have mailed in a check or money order. She was aware that there was a charge for the card payment, and she was aware of the amount. And she said, yes, you know, I will do that. She did that four times under the record. And it was clear, I mean, in regard to the ER 62 on, the concessions made by counsel where the court says, but you don't quarrel that Ms. Syria was given the option of paying without a transaction fee. I think the record establishes that, Your Honor, right? And it goes on and it talks about how she was not compelled to do that, which also takes away proximate cause, which kind of leads into the last issue here today, and that's the request to certify questions to the Washington Supreme Court. It is not necessary to do that. Federal courts handle statutes like this all the time. The statutes themselves are clear in what they say. They're clear in how a claim is defined. They're clear in regard to the ability to contract. If plaintiff has an issue with the result of the clear language of the statute, the plaintiff needs to take that to the Washington legislature because it's the legislature that can correct this. And I would note, Your Honors, that in the last two years that there's been a great deal of change, both in regard to legal financial obligations and in regard to the Collection Agency Act. And so, for example, early last year they said LFOs, you can't charge interest on them in regard to certain criminal LFOs. And that was spread out over a whole bunch of statutes. Same thing with changes this year in regard to the Collection Agency Act. There's been a great deal of changes in regard to medical debt, consumer debt, and that type of thing. So if there's going to be a change in how we interpret the Collection Agency Act, that should go to the legislature. But again, getting back to the submitting questions, Judge Zille had no problem looking at the clear language of the statute and deciding. And Judge Layton, in the Calderon case, came to exactly the same conclusion. And Judge Zille didn't look at Calderon, didn't cite Calderon. He came up with his own determination as to what the statutory language means. And the same thing in regard to both statutes. And also, there's no need to certify because the case fails on other issues like proximate cause. So generally, you only certify these questions if it's needed in order to get to a final resolution of the case. It's not needed to get to the final resolution of the case here, Your Honors, because this case can and was decided on other issues. My time is almost up. Do anyone have any questions here? No. No questions. Thank you. Thank you, Your Honors. Again, we request that the Court affirm on all grounds. Okay. Thank you. If you would put two minutes on the clock, please. Thank you for your indulgence, Your Honor. First, it manifestly was in the record that treble damages were being sought in this case. It was in the first amended complaint in the prayer for relief. It was repeated in the January 2017 discovery responses. What Cuxhausen and Carvalho both say is the defendant has got to, at a minimum, engage in simple math. And that is, in fact, what they did in the notice of removal. They multiplied $166,000 debtors by $2,000 in statutory penalties. And it was a very simple matter to multiply 3.3 million times 3 for the treble damages that were pled back in June 2016, a year, more than a year, before this case was removed and reiterated in January 2017. Second, with respect to this definition of claim and debtor, I'm glad that counsel pointed out that debtor is defined in 1916-100, because debtor is also used in 1916-500. And, again, this restriction in 1916-500 to the same remedies and powers doesn't mean anything if it doesn't mean that Section 250 and the prohibited practices apply. With respect to King County District Court, it is disputed that the district court takes any profit off of its acceptance of credit card transactions, whereas there is no dispute here that Alliance 1 takes anywhere between $7 and $9.50 in profit for every transaction fee. Voluntary payment is not a defense under the CPA. Cases under the CPA, like Hanshin and Reach, say a consumer, even if they pay an unlawful fee, that does not eliminate the liability of the defendant for charging the unlawful fee. And, finally, on certification, two state court judges prior to this reached an opposite conclusion from Judge Zille on the scope of the Collection Agency Act and the coverage of the CPA and the reasonableness or lawfulness of the fee in this case. That shows that these are unresolved questions of state law. They are determinative of this case. They touch on important issues of public policy in Washington, governing collection agencies and concerning the payment of LFOs. And so if this court does not remand, it should certify those questions to the state court. Okay. Thank you very much on both sides. Syria v. Alliance 1 submitted for decision. And, finally, one last case.
judges: Hawkins, W. Fletcher, Bennett